**In re Benjamin CLARK, Debtor.**

**Bankruptcy No. 89–40385–W–13.**

United States Bankruptcy Court,
W.D. Missouri.

May 15, 1989.

Jack R. Grate, Independence, Mo., for debtor.

Alan E. South, Kansas City, Mo., for movant.

Rick Fink, Chapter 13 Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

■ Debtor filed his Chapter 13 petition on February 27, 1989. Federal National Mortgage Corp. (hereinafter movant) had foreclosed, by nonjudicial proceedings, the debtor's residence on October 27, 1988; was the successful bidder at the foreclosure sale, had recorded its trustee's deed; and had obtained a judgment of unlawful detainer in the Associate Division of the Circuit Court of Jackson County, Missouri, on December 13, 1988. The only interest that debtor possessed in said property was his continuing retention of naked possession contrary to the Circuit Court judgment. This Court agrees with the movant's assertion in its Motion For Relief From Automatic Stay that debtor had no legal interest in said real estate and that same did not become property of the estate. However, the reach of the automatic stay is extremely broad and it did indeed thwart movant's actions to cause the sheriff to forcibly remove debtor from the premises as set out in 11 U.S.C. § 362(a)(1) and (2).

Movant, thereafter, properly sought relief from the stay so that it could have the sheriff set debtor's furniture out in the street and debtor out of the premises or perhaps into durance vile if his objections thereto became too obstreperous. Debtor's counsel responded to the motion and filed what he denominated a "Counterclaim For Relief Under 11 U.S.C. Section 548". Readers of this opinion will immediately recognize this as the "fraudulent transfer section" and hopefully will also reflect that actions thereunder are brought as adversary proceedings and not by motion. The Court thus was troubled by this procedural anomaly but heard the matter upon the apparent consent of all parties.

The evidence adduced at the hearing revealed that debtor had purchased the home in 1979 and had become delinquent for no apparent reason. At the time of the foreclosure, movant had obtained a "windshield appraisal" of the home and had an opinion from a real estate broker that the "liquidation value" was $65,000.00. The Court presumes that "liquidation value" meant fast sale value. Debtor owed $59,646.43 plus $805.00 foreclosure expenses, but movant chose to bid only $45,000.00 at the sale. Thus debtor not only was no longer the owner, but faced a deficientcy of $14,-951.43. More importantly, at least for the instant exercise, debtor was rendered insolvent, because at that moment the total of debtor's proven obligations of $18,973.15 exceeded the value of his proven assets of $4,550.00. Had movant bid its debt, interest and costs of $60,451.34, debtor would not have been rendered insolvent and equally important this author doubts that any court would have considered the transfer fraudulent by virtue of an alleged failure of debtor to have received the reasonably equivalent value of the transferred asset. Stated most simply in today's parlance, movant by its lack of foresight not only shot itself in the foot but also swallowed a poison pill with its below value bid.

■ Having established that debtor was rendered insolvent by the transfer, the Court must resolve next whether said foreclosure was a transfer for less than reasonably equivalent value. Counsel for movant not only has argued with vigor debtor's solvency, but has also ably argued that the bid of $45,500.00 fulfills the so called bright line rule of *Durrett*, (*Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980)). In fact this Court suspects that movant deliberately bid 70% of what it believed to be the fast sale value of the property to conform to that perceived safe haven. This Court would suggest two things to mortgage servicing institutions of movant's ilk. First, 70% is not a bright line rule. Instead, *Durrett*, id., (as read by this author) said only that any bid below 70% of value has never been approved by the courts in Texas when con-

sidering non judicial sales in Texas. That seems to be somewhat different from saying that a 70% bid is automatically the equivalent of reasonably equivalent value. Second, in the Eighth Circuit, *Durrett*, id., has no effect, and the far more rational doctrine of "reasonably equivalent value" is the law in this seven state heartland. *In re Hulm*, 738 F.2d 323 (8th Cir.) cert. denied, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed. 2d 331 (1984), on remand, 45 B.R. 523 (Bankr.D.N.D.1984). While some pre-set percentage formula is always comforting to those parties who prefer their law measured in feet and inches or dollars and cents, law should only rarely be the cold companion of science, without the duality of a modifier of reasonableness. If the practice of law is both an art and a science (as its servants so often state) then the *Hulm* rule is a far better measure than the *Durrett* rule.

Applying then the *Hulm* path, this Court finds that debtor was rendered insolvent by the transfer; that said transfer was not for a reasonably equivalent value; and that the transfer was incurred within one year before the date of the filing of the petition in bankruptcy. The Court believes that such findings satisfy all of the prerequisites of 11 U.S.C. § 548(a)(2)(A) and (B). In view of those findings, the Court concludes that there was a fraudulent transfer and that, therefore, movant may not prevail upon its Motion For Relief From Automatic Stay. The Court will not make any further ruling because of the unusual posture of the case procedurally and further proceedings may be necessary to effectuate the nuances of the limited ruling made. While it well may be that the remaining problems can be resolved by negotiation, since both parties are represented by able and reasonable counsel, debtor's counsel is thereby warned that should negotiations fail, he has only won a skirmish (not the war) at this point.